**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI-DADE DIVISION**
**"IN ADMIRALTY"**

**CASE NO.:**

NAHIM JORGE BONILLA, individually,
and as a member of SEA-ERA CHARTERS, LLC,
a Florida Limited Liability Corporation,

      Plaintiffs,

vs.

SIMON LIBRATI, individually, and as a
member of SEA-ERA CHARTERS, LLC
SIERRA DREW SMEBAKKER a/k/a
SIERRA DREW SMEBAKKEN, individually, and
as a manager of SEA-ERA CHARTERS, LLC; and
JOHN DOE, holder of loan note for M/Y "*SEA ERA*,"
a 2013, 78' Ferretti manufactured vessel, with
Hull Identification # XFAF8702A313.

      Defendants.

_____/

**VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY RELIEF,**

**and OTHER EQUITABLE RELIEF**

    *Forenote: A verified emergency motion for temporary injunctive relief is being filed immediately following this Complaint.*

    COMES NOW, Plaintiff, NAHIM JORGE BONILLA individually, and as a member of SEA-ERA CHARTERS, LLC, by and through the undersigned counsel, and seeks Injunctive, Declaratory and other equitable relief against the above-named Defendants, and in support thereof, states as follows:

**Jurisdiction & Venue**

1. This cause of action is under Admiralty and Maritime jurisdiction within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and is within the jurisdiction of this Court pursuant to 28 U.S.C. §1333.

2. This Court also has jurisdiction over this matter as an issue involving a preferred ship mortgage under 46 U.S.C. § 31322.

3. Jurisdiction and Venue is also proper because the vessel M/Y "*SEA ERA*," and the named Defendants are located within the jurisdiction of this Court.

**Parties**

4. Plaintiff, NAHIM JORGE BONILLA (hereinafter "Mr. Bonilla"), is a Canadian citizen, residing in Canada, as well as a member of SEA-ERA CHARTERS, LLC (hereinafter "SEC").   Moreover, Mr. Bonilla owns 50% of all outstanding shares of SEC.

5. Defendant, SIMON LIBRATI (hereinafter "Mr. Librati"), is a Canadian citizen, residing in Miami, FL, as well as a member of SEC. Mr. Librati owns the remaining 50% of all outstanding shares of SEC.

6. Defendant, SIERRA DREW SMEBAKKER, a/k/a SIERRA DREW SMEBAKKEN, (hereinafter "Ms. Smebakken"), was designated by both Members as Manager of SEC.

7. Defendant, JOHN DOE, is the unidentified not-holder of a preferred ship mortgage secured by the vessel, M/Y "*SEA ERA*," which is owned by SEC, which Mr. Librati and Ms. Smebakken have repeatedly refused to identify, and which has failed to record their assignment of a preferred ship mortgage with the United States Coast Guard documentation center.

**Background**

1. Sea-Era Charters, LLC is the owner of record for the Vessel. *See* Certificate of Documentation attached hereto as "Exhibit A."

2. Sea-Era Charters, LLC (hereinafter "SEC") is owned as 50% member by Plaintiff, Nahim Jorge Bonilla, and Defendant, Simon Librati is also a 50% member. *See* Operating Agreement Attached hereto as "Exhibit B."

3. SIERRA LIBRATI a/k/a SIERRA DREW SMEBAKKER, a/k/a SIERRA DREW SMEBAKKEN, was designated by both Members as Manager of SEC. *See* Attachment B to Operating Agreement, attached hereto as "Exhibit B."

4. Additionally, the Operating Agreement contains a provision which requires the Parties to make equivalent financial contributions.

5. On or about September 2, 2020, SEC purchased the Vessel, from Miami Beach Yachts Sales, LLC (hereinafter "MBYS"), for a purchase price of Two Million, Seven Hundred and Fifty Thousand Dollars ($2,750,000) and MBYS gave SEC a preferred ship mortgage which funded Two Million and Fifty Thousand Dollars ($2,050,000) of SEC's purchase of the Vessel. *See* Recorded Preferred Ship Mortgage attached hereto as "Exhibit C."

6. Additionally, SEC gave MBYS a note to secure the Preferred Ship Mortgage against the Vessel.

7. Mr. Bonilla alone funded the Seven Hundred Thousand Dollar ($700,000.00) initial payment due to purchase the Vessel.

8. Thereafter, the Preferred Ship Mortgage for the balance due of $2,050,000.00 required SEC to make payments as follows:

   a. 6 months of $50,000 monthly payments plus interest at 7%; and

   b. a balloon note on March 1, 2021, with the balance due of $1,810,500.00.

9.  By March 1, 2021, Mr. Bonilla had contributed $946,083.33, which consisted of the aforementioned initial payment of $700,000.00, plus all monthly loan payments of $50,000.00, plus interest, from October of 2020, through January of 2021.

10. Disproportionately, Mr. Librati only contributed the February monthly payment in the amount due of $60,791.67.

11. At this point SEC had accumulated over $900,000 in equity in the Vessel and should SEC default under the Preferred Ship Mortgage, then the $900,000 in equity accumulated by SEC in the Vessel, the overwhelming majority of which was funded by Mr. Bonilla.

12. On March 1, 2020, the date certain for the balloon payment under the Preferred Ship Mortgage, Mr. Librati through attorney, Daniel Novela, Esq., demanded that Mr. Bonilla reimburse half of the single February 2021 mortgage payment Mr. Librati  tendered in the amount of $60,791.67, in addition to half of the of the balloon payment due under the note, $1,810,500.00. *See* Letter from Attorney Novela dated 3/1 attached hereto as "==Exhibit== D."

13. On March 8, 2021, David Milian, Esq. dispatched a response on behalf of Mr. Bonilla to Attorney Novela, advising of the disproportionality of the amounts previously paid and asserting that the balance due should be shared based on the proportions already tendered by the Parties towards the Purchase of the Vessel. *See* Letter from Attorney Milian dated 3/8  attached hereto as "==Exhibit== E."

14. Pursuant to the agreement with the lender, SEC had 60 days to cure the default of March 1, 2021. Consequently, SEC has a deadline of April 30, 2021 to fully satisfy the Preferred Ship Mortgage, thus curing any breach.

The Evolution of Defendants' Scheme to Defraud Mr. Bonilla

*Step 1: Force the Vessel into Foreclosure.*

15. Regardless of the disproportionate contributions between the Parties Defendant refused and otherwise failed to honor his obligations under the Operating Agreement between the Parties by refusing to make equivalent contributions to SEC's sole asset, M/Y "SEA ERA," thereby allowing the Vessel to default under the Vessel's Preferred Ship Mortgage.

16. Thereafter, Mr. Bonilla informed Mr. Librati of his intent to procure a lender to refinance the balance of the Preferred Ship Mortgage.

*Step 2: Record Fraudulent Lien on the Vessel's Title in an Effort to Prevent Mr. Bonilla from Obtaining Alternative Funding to Satisfy the Preferred Ship Mortgage on the Vessel*

17. On or about February 22, 2021, in order to subvert Mr. Bonilla's efforts to refinance the Preferred Ship Mortgage with a "cloud" on the Vessel's title, Mr. Librati recorded a fraudulent lien for a second "Preferred Ship Mortgage" on the Vessel's title with the United States Coast Guard, in favor of Defendant, Simon Librati, in the amount of $837,000.00. *See* USCG Abstract of Title for M/Y "Sea Era," Pg. 4 attached hereto as "Exhibit F."

18. Mr. Librati did not inform Mr. Bonilla of his intentions or otherwise follow proper procedures which would allow Mr. Librati to record the lien, which directly conflicts with SEC's financial interests, and violates Mr. Librati's obligations under the Florida Revised Limited Liability Company Act, as well as the SEC Operating Agreement.

*Step 3: Disseminate False Information that the Vessel had been Repossessed by the Lender*

19. On March 19, 2021, Attorney Novela dispatched an email stating that the vessel had been repossessed. *See* Email from Attorney Novela dated 3/19 attached hereto as "Exhibit G."

20. Directly to the contrary, and as evidence that the current noteholder is conspiring with Mr. Librati, the vessel remained parked behind Mr. Librati's house as of April 7, 2021. *See* Photo of Vessel behind Mr. Librati's house attached hereto as "Exhibit H."

21. On April 4, 2021, twenty-six days before the deadline to cure the default under the Preferred Ship Mortgage, Mr. Bonilla procured a lender, Meridian Real Estate Holdings, LLC ("Meridian") to refinance the full balance due on the Preferred Ship Mortgage, thereby preserving SEC's equity in the Vessel. *See* Letter of Intent from Meridian attached hereto as "Exhibit I."[1]

22. Meridian is ready willing and able, fund 100% of the balance due from SEC under the Preferred Ship Mortgage, in order to avoid what will be a greater than $900,000 loss in equity to SEC.

*Step 4: Mr. Librati and Ms. Smebakken Conspire with Mortgagee by Having Mortgagee State that the Note was Assigned to a "John Doe" Third Party, whom all Defendants have refused to disclose to Mr. Bonilla, and whom has failed or intentionally neglected to record their interest in the Vessel on the title with the United States Coast Guard, thereby fraudulently preventing Mr. Bonilla from having access to the identity and contact information of the proper individual or entity, in order to satisfy the Preferred Ship Mortgage, and Defendants will share in SEC's $900,000 (approx.) in equity, 95% of which had been funded by Mr. Bonilla.*

23. On April 8, 2021, shortly after tendering Meridian's letter of intent and proof of funds, which was intended to resolve the breach of contract with MBYS, the Preferred Ship

---

[1] As further support for the funding, Meridian also supplied proof of funds which was provided to the lender's attorney and will be made available to the Court at a hearing on the matter.

Mortgage Holder, Mr. Bonilla was informed for the first time that MBYS had assigned the Preferred Ship Mortgage to a new entity.

24. Attorney Milian, immediately tendered a demand to Attorney Novela, as counsel for Mr. and Ms. Smebakken, which included the following:

> "…Please have Ms. [Librati] provide me with the name, postal address, phone number, and email address of the assignee of the note and mortgage so that Meridian's LOI and related tender of payment for the balance of the loan can be properly directed to the assignee.
>
> As Mr. Librati and [Ms. Smebakken] are aware, the 60-day cure period under the promissory note lapses on April 30, thereby exposing Sea Era Charters, LLC's only asset to foreclosure/seizure. It is clearly in the Company's best interests to have the existing debt paid off immediately in order to preserve the Company's property."
>
> *See* April 8, 2021 Email from Attorney Milian attached hereto as "Exhibit J."

25. Despite Defendants' statutory obligations under the Florida Revised Limited Liability Company Act, as well as the SEC Operating Agreement, the information requested was never provided.

26. Attorney Milian has also advised the undersigned that he spoke with counsel for MBYS, who confirmed that the Preferred Ship Mortgage was assigned to a new entity, however, he did not identify the new entity, and represented to Attorney Milian that the obligation was satisfied since he previously provided the identity of the new noteholder to SEC (a/k/a Mr. Librati and Ms. Smebakken).

27. On April 16, 2021, the date the undersigned was retained, an abstract of title was ordered from the United States Coast Guard ("USCG"), which should provide the identity of the current noteholder of the Vessel, if the assignment was properly recorded.

28. On April 20, 2021, the undersigned emailed, called and left a voicemail for Attorney Novela, requesting the identity and contact information for the current noteholder for the Preferred Ship Mortgage. *See* Email from the undersigned to Attorney Novela attached hereto as "Exhibit K."

**29. To date, no response has been received from Attorney Novela.**

30. It has become apparent that Attorney Novela revealed Mr. Librati's intentions in an email dated March 17, 2021, stating:

> "It appears that we are at an impasse, if your client is unwilling to pay his contribution to the pending loan that is in default, **there is no option but the boat going back to the lender. Each party can then negotiate to buy if from the Lender if they wish or buy another boat**. But that would be individual, because at that point my client will not be interested in partnering with yours." [emphasis added]

31. Based on the following list actions and omissions by, and on behalf of, Mr. Librati, it is abundantly clear that the Defendants are engaged in a conspiracy to commit fraud against Mr. Bonilla and are intentionally breaching their statutory obligations under the Florida Revised Limited Liability Company Act, as well as the SEC Operating Agreement as follows:

    a. Mr. Librati intentionally failed to honor his obligations to fund SEC, thereby allowing SEC to default on the Preferred ship Mortgage after Mr. Bonilla had contributed 946,083.33, and Mr. Librati only contributed $60,791.67;

    b. After Mr. Bonilla advised Mr. Librati that he would procure independent financing, to cure the default and protect SEC's asset, Mr. Librati clouded the title with a fraudulent preferred ship mortgage, to deter any interested entities from refinancing the Preferred Ship Mortgage timely (by April 30, 2021);

c.   Mr. Librati and Ms. Smebakken have continued to conceal the identity of the Preferred Ship Mortgage holder, in direct breach of their statutory obligations under the Florida Revised Limited Liability Company Act;

d.   The current note holder has *conveniently* failed to promptly record their interest in the Vessel, which would put Mr. Bonilla on notice as to the identity of the entity or individual with whom the Preferred Ship Mortgage breach requires curing; and

e.   As further evidence of a conspiracy between Mr. Librati and the current noteholder, on March 19, 2021, Mr. Librati's attorney reported that the vessel had been repossessed, directly to the contrary, on April 7, 2021, the Vessel was still parked behind Mr. Librati's house.

32. All conditions precedent to the filing of the instant action have occurred or otherwise have been waived.

33. Plaintiff has required the assistance of counsel to resolve the matters identified herein and is entitled to recover Plaintiff's reasonable fees and costs from Defendants, individually, pursuant to the Operating Agreement, the Florida Revised Limited Liability Company Act, 46 U.S.C. § 31343, and the equitable powers granted to this Court in Admiralty.

**I.    Claim for fraud and declaratory relief voiding the fraudulent lien filed by Simon Librati against the Vessel on February 22, 2021.**

34. Plaintiff hereby incorporates paragraphs 1 through 33 as alleged herein.

35. Rule 9(b) of the Federal Rules of Civil Procedure provides, in pertinent part, that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Further, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." <u>Id</u>.

36. This Rule "serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." <u>Brooks v. Blue Cross and Blue Shield of Florida, Inc.</u>, 116 F.3d 1364, 1370-71 (11th Cir. 1997) *quoting* <u>Durham v. Business Mgmt. Assocs.</u>, 847 F.2d 1505, 1511 (11th Cir. 1988) (internal quotation marks omitted).

37. That stated, the Court must not allow the application of Rule 9(b) to vitiate the overall concept of notice pleading. *See* <u>Ziemba v. Cascade Int'l, Inc.</u>, 256 F.3d 1194, 1202 (11th Cir. 2001).

38. This Rule is satisfied if the complaint sets forth:

> (1) the exact statements or omissions made;
>
> (2) the time and place of each such statement and who made the statement or omission;
>
> (3) the substance of the statement and how it misled the plaintiff; and
>
> (4) the defendants' gain due to the alleged fraud.
>
> *See* <u>id</u>. (quoting <u>Brooks</u>, 116 F.3d at 1371).

39. Maritime liens must be construed *"strictijuris,* and cannot be extended by construction, analogy or inference." *Osaka Shosen Kaisha v. Pacific Export Lumber Co.,* 260 U.S. 490 [1923 AMC 55] (1923). Consequently, "[t]he only liens recognized today are those created by statute and those historically recognized in maritime law."

40. To assert a maritime lien, the claimant cannot himself have any direct ownership interest in the vessel. *Medina v. Marvirazon Compania Naviera, SA.,* 709 F.2d 124, 1983 AMC 21 13 (1 st Cir. 1983); *Security Pacific National Bank v.* 0 /S *Pacific Pride,* 549 F.Supp. 53, 1983 AMC 769 (W.D. Wa. 1982). *Sasportes v. M/V Sol de Copacabana,* 581 F.2d 1204, 1980 AMC 791 (5 th Cir. 1978), stated:

"When the seas get rough one who looks, thinks, acts and profits like an owner cannot retreat to the relatively safe harbor of a maritime lienor, who of course has a claim against the ship itself."

41. Moreover, the Eleventh Circuit holds "Owners and others in fiducia1y relationships with the owners are deemed to not rely on the credit of the vessel when they are dealing with themselves and their co-owners. See, *e.g., E.* S. *Binnings, Inc. v. M/V Saudi Riyadh,* 815 F.2d 660 ( 11 t11 Cir. 1987).

42. Contrary to the foregoing, Defendant, Simon Librati, without proper authorization from SEC, recorded a fraudulent lien against the Vessel. *See* Copy of Abstract of Title attached hereto as "Exhibit F."

43. Recorded fraudulent lien as a "poisoned pill" to prevent Plaintiff from obtaining replacement financing, thereby substantially increasing the likelihood that the vessel will be foreclosed upon.

44. 46 U.S.C. § 31343 grants to district courts authority to declare that a vessel is not subject to a lien claimed or that the vessel is not subject to the notice of claim of lien, or both. § (c)(2) permits a district court to award costs and attorney fees to an owner of a vessel against which a claim of lien was wrongfully filed unless the court finds that the position of the party who filed the claim of lien "was substantially justified or other circumstances make an award of costs and attorneys fees unjust." See, *e.g., Cianbro C01p. v. George H. Dean, Inc.,* 20 10 AMC 2074 (D. Me. 2010). *Whalen v. M/V Miluska,* 385 Fed. Appx. 717 (9th Cir. 2010)

**II. Claims against Defendant Librati  and Ms. Smebakken for Judicial Expulsion from SEC**

45. Plaintiff hereby incorporates paragraphs 1 through 33 as alleged herein.

**A.      Breach of Standards of conduct for members and managers against Mr. Librati and Ms. Smebakken**

46. **605.04091** (1)   Each manager of a manager-managed limited liability company and member of a member-managed limited liability company owes fiduciary duties of loyalty and care to the limited liability company and members of the limited liability company.

(2)    The duty of loyalty includes:

(a)    Accounting to the limited liability company and holding as trustee for it any property, profit, or benefit derived by the manager or member, as applicable:

1.   In the conduct or winding up of the company's activities and affairs;

2.   From the use by the member or manager of the company's property; or

3.   From the appropriation of a company opportunity;

(b)    Refraining from dealing with the company in the conduct or winding up of the company's activities and affairs as, or on behalf of, a person having an interest adverse to the company …

(4)    A manager of a manager-managed limited liability company and a member of a member-managed limited liability company shall discharge their duties and obligations under this chapter or under the operating agreement and exercise any rights consistently with the obligation of good faith and fair dealing.

47. Mr. Librati and Ms. Smebakken have breached the foregoing duties of loyalty as stated in greater detail above and incorporated herein by reference.

**B. Claim for Personal Liability for a Manager or Member of an LLC against Mr. Librati and Ms. Smebakken**

48. Florida Statute § 605.04093 (1)   A manager in a manager-managed limited liability company or a member in a member-managed limited liability company is not personally liable for monetary damages to the limited liability company, its members, or any other person for any statement, vote, decision, or failure to act regarding management or policy decisions by a manager in a manager-managed limited liability company or a member in a member-managed limited liability company unless:

   (a)   The manager or member breached or failed to perform the duties as a manager in a manager-managed limited liability company or a member in a member-managed limited liability company; and

   (b)   The manager's or member's breach of, or failure to perform, those duties constitutes any of the following:

   ----

   2.   A transaction from which the manager or member derived an improper personal benefit, directly or indirectly.

49. Mr. Librati and Ms. Smebakken are personally liable for monetary damages to the limited liability company, its members due to their respective breaches of the Operating Agreement and failures to perform their duties to avoid deriving improper personal benefit, directly or indirectly as follows:

   a.   Mr. Librati recorded a preferred ship mortgage in his favor against SEC's asset, the Vessel, thereby creating a liability to SEC and clouding the title to prevent SEC from obtaining refinancing of the Preferred Ship Mortgage, in an attempt to usurp SEC's equity in the Vessel for his own benefit.

b. Ms. Smebakken resides with and shares a child with Mr. Librati directly and indirectly benefited from the foregoing actions to which Ms. Smebakken was an active participant or was complicit in Mr. Librati's actions.

**C. Claim for failure to produce records and information regarding the activities, affairs, financial condition, and other circumstances that is known to the company against Mr. Librati and Ms. Smebakken**

…

50. Florida Statute § 605.0410(2)   In a member-managed limited liability company, the following rules apply:

(a)   Upon reasonable notice, a member may inspect and copy during regular business hours, at a reasonable location specified by the company:

1.   The records described in subsection (1); and

2.   Each other record maintained by the company regarding the company's activities, affairs, financial condition, and other circumstances, to the extent the information is material to the member's rights and duties under the operating agreement or this chapter.

(b)   The company shall furnish to each member:

1.   Without demand, any information concerning the company's activities, affairs, financial condition, and other circumstances that is known to the company and is material to the proper exercise of the member's rights and duties under the operating agreement or this chapter, except to the extent the company can establish that it reasonably believes the member already knows the information;

51. Mr. Librati and Ms. Smebakken have breached their duty to provde Mr. Bonilla with information regarding the company's activities, affairs, financial condition, and other circumstances that is known to the company and is material to the proper exercise of the

member's rights and duties under the operating agreement or this chapter, except to the extent the company can establish that it reasonably believes the member already knows the information, by refusing to identify the note holder for the Preferred Ship Mortgage.

**D. Claim for Court-ordered inspection of records**

52. Florida Statute § 605.0411 provides:

> (1)   If a limited liability company does not allow a member, manager, or other person who complies with s. 605.0410(2)(a), (3)(a), (3)(b), or (4), as applicable, to inspect and copy any records required by that section to be available for inspection, the circuit court in the county where the limited liability company's principal office is or was last located, as shown by the records of the department or, if there is no principal office in this state, where its registered office is or was last located, may summarily order inspection and copying of the records demanded, at the limited liability company's expense, upon application of the member, manager, or other person.

> (2)   If the court orders inspection or copying of the records demanded, it shall also order the limited liability company to pay the costs, including reasonable attorney fees, reasonably incurred by the member, manager, or other person seeking the records to obtain the order and enforce its rights under this section unless the limited liability company proves that it refused inspection in good faith because the company had a reasonable basis for doubt about the right of the member, manager, or such other person to inspect or copy the records demanded.

53. Mr. Bonilla has complied with 605.0410.

54. However, Mr. Librati and Ms. Smebakken have failed to allow Mr. Bonilla to inspect and copy or otherwise have access to records required by that section to be available for inspection.

**E. Claim for Breach of Statutory obligation causing dissociation against against Mr. Librati and Ms. Smebakken**

55. Florida Statute § 605.0602 (6)   On application by the company or a member in a direct action under s. 605.0801, the person is expelled as a member by judicial order because the person:

   (a)   Has engaged or is engaging in wrongful conduct that has affected adversely and materially, or will affect adversely and materially, the company's activities and affairs;

   (b)   Has committed willfully or persistently, or is committing willfully or persistently, a material breach of the operating agreement or a duty or obligation under s. 605.04091; or

   (c)   Has engaged or is engaging in conduct relating to the company's activities and affairs which makes it not reasonably practicable to carry on the activities and affairs with the person as a member.

56. As described in further detail above, Mr. Librati and Ms. Smebakken have breached obligations subjecting them to dissociation, and they should be judicially expelled from SEC.

**F. Claim for Breach of Operating Agreement and Fiduciary Duties against Mr. Librati and Ms. Smebakken**

57. SEC's Operating Agreement provides as follows:

(a) Duties of the Members. The Members shall cause the Company to do or cause to be done all things necessary to preserve and keep in full force and effect its existence, rights (charter and statutory) and franchises. The Members also shall cause the Company to:

…

4. Not commingle its assets with assets of the Members or any other person, and separately identify, maintain and segregate all Company assets

…

6. Maintain an arm's length relationship with the Members, and, with respect to all business transactions entered into by the Company with the Members, require that the terms and conditions of such transactions (including the terms relating to the amounts paid thereunder) are the same as would be generally available in comparable business transactions if such transactions were with a person that was not a Member;

…

8. Not guarantee or become obligated for the debts of any other person or hold out its credit as being available to satisfy the obligations of others;

…

10. Not pledge its assets for the benefit of any other person or make any loans or advances to any person;

…

12. Maintain adequate capital in light of its contemplated business purposes;

…

13. Cause its Members to meet or act pursuant to written consent and keep minutes of such meetings and actions and observe all other Florida limited liability company formalities;

58. As described in further detail above, Mr. Librati and Ms. Smebakken have breached the foregoing obligations as required by the Operating Agreement subjecting them to dissociation, and they should be judicially expelled from SEC.

**H. Fiduciary Duties of the Members.**

59. SEC's Operating Agreement provides as follows:

1. *Loyalty and Care.* The Members shall have only the fiduciary duties of loyalty and care required under Florida Revised Limited Liability Company Act.

    i. *Loyalty.* The duty of loyalty shall be limited to:

a. Not usurping or otherwise appropriating an opportunity of the Company without disclosure to and authorization from the other Members;

b. Refraining from competing against the company in the conduct of the Company's activities without disclosure to and authorization from the other Members;

c. Accounting to the other Members any property, profit or benefit derived by the Member in the conduct or winding up of the Company's affairs, or by the use of the Company's property.

ii. *Care.* The duty of care shall be limited to refraining from engaging in grossly negligent or reckless conduct, willful or intentional misconduct, or a knowing violation of law.

2. *Competition with the Company.* The Members shall refrain from dealing with the Company in the conduct of the Company's business as or on behalf of a party having an interest adverse to the Company unless a majority, by individual vote, of the Members excluding the interested Member, consents thereto. The Members shall refrain from competing with the Company in the conduct of the Company's business unless a majority, by individual vote, of the Members excluding the interested Member, consents thereto. In the event that a Member is the sole Member of the Company, no vote shall be required.

3. *Duties Only to the Company.* The Member's fiduciary duties of loyalty and care are to the Company and not to the other Members. The Members shall owe fiduciary duties of disclosure, good faith and fair dealing to the Company and to the other Members. A Member who so performs their duties shall not have any liability by reason of being or having been a Member.

60. As described in further detail above, Mr. Librati and Ms. Smebakken have breached the foregoing fiduciary duties as required by the Operating Agreement subjecting them to dissociation, and they should be judicially expelled from SEC.

### III.     Claim for Civil Conspiracy against Ms. Smebakken

61. Plaintiff hereby incorporates paragraphs 1 through 31 as alleged herein.

62. Under Florida law, "[t]he elements of a civil conspiracy are: (a) a conspiracy between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts performed pursuant to the conspiracy." *Walters v. Blankenship*, 931 So. 2d 137, 140 (Fla. 5th DCA 2006). Generally, an actionable tort or wrong is required. Id.

63. Ms. Smebakken and Mr. Librati and the John Doe noteholder have engaged in a conspiracy to deprive SEC and Mr. Bonilla of equity rightfully held in the Vessel.

64. Ms. Smebakken has intentionally concealed the identity of the current noteholder for the Vessel and has authorized or was otherwise complicit with Mr. Librati's filing of a fraudulent lien in violation of Federal Maritime Law and Florida Revised Limited Liability Company Act.

65. As a result of the foregoing unlawful acts and omissions performed pursuant to the conspiracy, Mr. Bonilla and SEC have been damaged.

### IV.     Claim for Civil Conspiracy to Commit Fraud against "John Doe" Noteholder

66. Plaintiff hereby incorporates paragraphs 1 through 31 as alleged herein.

67. Under Florida law, "[t]he elements of a civil conspiracy are: (a) a conspiracy between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c)

the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts performed pursuant to the conspiracy." Walters v. Blankenship, 931 So. 2d 137, 140 (Fla. 5th DCA 2006). Generally, an actionable tort or wrong is required. Id.

68. Ms. Smebakken and Mr. Librati and the John Doe noteholder have engaged in a conspiracy to deprive SEC and Mr. Bonilla of equity rightfully held in the Vessel.

69. John Doe noteholder has intentionally concealed its identity by intentionally failing to record its assigned interest in the Preferred Ship Mortgage on the Vessel's title.

70. As a result of the foregoing unlawful acts and omissions performed pursuant to the conspiracy, Mr. Bonilla and SEC have been damaged.

WHEREFORE Plaintiff respectfully requests that this Court grant Plaintiff's Complaint for Injunctive Relief, Declaratory Judgment, and Other Equitable Relief as Follows:

1) Temporarily enjoin the noteholder from foreclosing on the Preferred Ship Mortgage, until a hearing can be had on this matter regarding any further relief;

2) Temporarily enjoin Mr. Librati and Ms. Smebakken from moving or otherwise absconding with the Vessel, until a hearing can be had on this matter regarding any further relief;

3) Direct all Parties to immediately disclose the identity of the current noteholder for the Vessel's Preferred Ship Mortgage;

4) Void the fraudulent Preferred Ship Mortgage recorded by Mr. Librati on February 22, 2021.

5) Judicially expel Mr. Librati from SEC and assign Mr. Librati's interest in SEC to Mr. Bonilla, subject to reasonable compensation for Mr. Librati's interest in SEC;

6) Judicially expel Ms. Smebakken from her position as Manager of SEC;

7) Assign all operating authority to Mr. Bonilla; and

8) Direct Ms. Smebakken and Mr. Librati to provide access or otherwise produce all documentation regarding SEC financial condition and other business dealings; and

9) Award Plaintiff all reasonable contractual and statutory attorney's fees and costs.

Respectfully Submitted,

By: s/ Adam Ludwin
    Adam M. Ludwin, Esq.
    Florida Bar No: 101742
    *Attorney for Plaintiff*
    Ludwin Law Group, P.A.
    85 S.E. 4th Avenue, Suite 108
    Delray Beach, FL 33483
    (O) (561) 455-4455
    (M) (561) 613-7392
    Primary Email: adam@ludwinlaw.com